IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02122–REB–KMT

ALTON DAVIS,

      Plaintiff,

v.

ERIC HOLDER,
JOHN O'DONNALL,
JASON ZAMALOFF, and
D. BERKEBILE,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Motion to Dismiss." (Doc. No. 46, filed Apr. 4, 2013.) For the following reasons, the court recommends that Defendants' Motion be GRANTED.

## FACTUAL BACKGROUND

      The following factual background is derived from Plaintiff's Amended Prisoner Complaint, filed November 29, 2012 (Doc. No. 17 [Am. Compl.]), and the parties' submissions with respect to this Recommendation. Plaintiff challenges certain Special Administrative

Measures ("SAMs") imposed on him by the defendants, pursuant to 28 C.F.R. § 501.3[1].  Plaintiff

is an inmate with the United States Bureau of Prisons (BOP) currently incarcerated at the United

States Penitentiary, Administrative Maximum ("ADX").  (Am. Compl. at 2.)

On May 3, 2010, Plaintiff was convicted of charges of conspiracy to commit Hobbs Act

robberies of suspected drug dealers; attempting to commit such robberies; multiple counts of

using and discharging a firearm, including causing two deaths; and conspiracy and intent to

distribute more than 100 kilograms of marijuana.  (*Id.* at 4; Resp. at 2 (citing *United States v.*

*Davis,* 689 F.3d 179, 181 (2d Cir. 2012) ("*Davis I*")).[2]  On August 24, 2010, Plaintiff was

sentenced to life in the BOP.  (Am. Compl. at 4.)

---

[1] 28 C.F.R. § 501.3(a) provides

> Upon direction of the Attorney General, the Director, Bureau of Prisons, may
> authorize the Warden to implement special administrative measures that are
> reasonably necessary to protect persons against the risk of death or serious bodily
> injury.  These procedures may be implemented upon written notification to the
> Director, Bureau of Prisons, by the Attorney General or, at the Attorney General's
> direction, by the head of a federal law enforcement agency, or the head of a
> member agency of the United States intelligence community, that there is a
> substantial risk that a prisoner's communications or contacts with persons could
> result in death or serious bodily injury to persons, or substantial damage to
> property that would entail the risk of death or serious bodily injury to persons.
> These special administrative measures ordinarily may include housing the inmate
> in administrative detention and/or limiting certain privileges, including, but not
> limited to, correspondence, visiting, interviews with representatives of the news
> media, and use of the telephone, as is reasonably necessary to protect persons
> against the risk of acts of violence or terrorism.

[2] The court may take judicial notice of this and the other appellate opinions discussed herein.
*See Vibe Techs., LLC v. Suddath,* No. 06-cv-00812, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov.
22, 2006) ("This court may take judicial notice of court documents and matters of public
record.").  *See also Tal v. Hogan,* 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("facts subject to
judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to

In June 2010, Plainitff was removed from general population at the Metropolitan

Correctional Center (MCC) in New York pending an "outside agency investigation."  (*Id.*) In

September 2010, while at the MCC in New York, Plaintiff was notified that SAMs were being

implemented with respect to his confinement.  (*Id*; Mot., Ex A-1.)[3]  Plaintiff alleges the SAMs

were requested by Defendant Zamaloff, Special Agent with the Bureau of Alcohol Tobacco and

Firearm; recommended by Defendant O'Donnell, Assistant United States Attorney for the

Southern District of New York; and approved by Defendant Holder, the United States Attorney

General.  (*Id.*)  Defendant Berkibile is the Warden of ADX, where the SAMs are currently

enforced.  (*Id.* at 5.)  Plaintiff alleges that the SAMs were imposed based solely on allegations,

rather than facts or evidence, that he threatened federal officials—specifically, Defendants

O'Donnell and Zamaloff.  (*Id.* at 6.)

---

dismiss into a motion for summary judgment.").

[3]     Exhibit A-1 to Defendants' Motion is a September 10, 2010 Memorandum from Suzanne
Hastings, Warden at MCC, to Plaintiff entitled "Origination of Special Administrative
Measures" (hereinafter "September 2010 Memorandum").  Defendants argue that the court may
consider this memorandum because Plaintiff "refers to and relies on the SAM in the Amended
Complaint."  (Mot. at 2 n.2.)

The court declines to consider the September 2010 Memorandum in reviewing
Defendants' Rule 12(b)(6) dismissal arguments.  Although Plaintiff certainly discusses the
SAMs imposed against him, at no time does he directly refer to the memorandum. *See Cnty. of
Santa Fe, N.M. v. Pub. Serv. Co. of N.M.,* 311 F.3d 1031, 1035 (10th Cir. 2002) (In considering a
Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court "may consider documents referred to in the
complaint if the documents are central to the plaintiff's claim and the parties do not dispute the
documents' authenticity.")

However, the court can and will consider the Memorandum in addressing Defendants'
Rule 12(b)(2) jurisdictional arguments. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282,
1295 (10th Cir. 2003) (court may consider documents beyond the pleadings to resolve disputed
jurisdictional facts without converting 12(b)(2) motion into a 12(b)(6) motion or one for
summary judgment).

According to Plaintiff, the SAMs "subject him to harsh treatment in solitary confinement in the special housing unit for SAM inmates" and deny him "his right and privilege to communicate with family, friends, the press, attorneys/paralegals services, [and] even free access to the courts of appeal and the appellate attorney who were [sic] assigned to represent him." (Am. Compl. at 5-6.)  Plaintiff also alleges that the SAMs deny him adequate access to medical services and treatment for his bladder cancer and diabetes.  (*Id.* at 7.)  Finally, Plaintiff asserts that at "this super maximum security and administrative measures prison there's a lack of getting enough fresh air, sunlight, no diabetic food provided for diabetic prisoners, . . . isolation 24 hours a day 7 days a week, no contact with other inmates, [and] mail restrictions with limited calls." (*Id.*)  Plaintiff's SAMs have been renewed annually.  (*Id.* at 2.)

Plaintiff's Amended Complaint asserts that the imposition and renewal of the SAMs violates his federal constitutional rights.  In particular, Claim One alleges that the SAMs violate Plaintiff's rights to free speech, free association, and access to the courts under the First Amendment to the United States Constitution.  (*See id.* at 6.)  Claim Two alleges that the SAM violates Plaintiff's  Fourth, Fifth,[4] Sixth, and Eighth Amendment rights.  (*Id.* at 7.)  Finally, Claim Three alleges, in essence, that Defendants O'Donnell and Zamaloff lack jurisdiction to monitor Plaintiff's mail and phone calls because, upon his conviction, he was transferred to the

---

[4] Plaintiff also asserts that Defendants violated his Fourteenth Amendment equal protection rights.  However, because the Fourteenth Amendment applies only to state action*, its* Equal Protection clause does not apply to the actions of federal officials. *Akbari v. Godshall,* 524 F. Supp. 635 (D. Colo. 1981).  Nevertheless, "the Fourteenth Amendment's equal-protection guarantee applies to the federal government through the Fifth Amendment's Due Process Clause." *See Jurado-Gutierrez v. Green,* 190 F.3d 1135, 1152 (10th Cir. 1999) (citing *Schweiker v. Wilson,* 450 U.S. 221, 226 & n.6 (1981)).  Accordingly, the court finds that Plaintiff's equal protection claim arises under the Fifth Amendment, rather than the Fourteenth Amendment.

4

jurisdiction of the BOP.  (*Id.* at 8.)  As a consequence, Plaintiff alleges the BOP, as opposed to

Defendants O'Donnell and Zamaloff, is now the "right and legal institution to monitor [his]

mail/phone."  (*Id.*)

Plaintiff seeks injunctive relief in the form of  an order removing the SAMs and

preventing them from being reimposed "with court order or (BOP) restrictions"; transfer to a

United States Penitentiary close to his family; and reassignment to the general population.  (*Id.* at

10.)  Plaintiff also seeks damages pursuant to *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics,* 403 U.S. 388 (1971).  (*Id.* at 4, 10.)

Defendants' Motion to Dismiss was filed on April 4, 2013.  (*See* Mot. Dismiss.)

Defendants argue that the court lacks personal jurisdiction over Defendants Holder, O'Donnell,

and Zamaloff; that Plaintiff is not entitled to monetary damages under *Bivens* for his First

Amendment, Fifth Amendment procedural due process, and Sixth Amendment claims; that

Plaintiff's Amended Complaint fails to state a claim for relief; and that they are entitled to

qualified immunity.  On April 24, 2013, Plaintiff filed his "Motion in Response to Defendants'

Motion to Dismiss, and Request for Striking and/or Denying the Motion and for Sanction against

Defendant's Attorney Ms. Marcy Cook," [5] which the court construes and hereinafter refers to as

Plaintiff's Response to the Motion to Dismiss.  (Doc. No. 49 [Resp.].)  Defendants filed their

---

[5] Plaintiff's response moves to strike Defendants' Motion to Dismiss and seeks sanctions against
Defendants' attorney, Assistant United States Attorney Marcy Cook.  This is improper.  *See*
D.C.COLO.LCivR 7.1C ("A motion shall not be included a response or reply to the original
motion.  A motion shall be made by separate paper.")  Nevertheless, the court advises Plaintiff
that the mere fact that he disagrees with Defendants' Motion to Dismiss is not a basis for striking
it or sanctioning Ms. Cook.

Reply on May 6, 2013.  (Doc. No. 50.)  Accordingly, this matter is ripe for the court's review and recommendation.

## LEGAL STANDARD

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.     *Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person."  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears

the burden of establishing personal jurisdiction over Defendants. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'" *Wenz*, 55 F.3d at 1505 (*quoting Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pleaded facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a

defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2007).  To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process.  *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966).  Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

**C.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

8

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

# ANALYSIS

## A.    *Official Capacity Claims*

Plaintiff's Amended Complaint does not specify whether his claims are brought against

Defendants in their individual capacities, official capacities, or both.  Where a plaintiff fails to

indicate the nature of the liability sought, the court should look to "'the substance of the

pleadings and the court of proceedings' to determine whether the plaintiff is suing the defendants

in their individual capacities or their official capacities, or both." *Arceo v. City of Junction City,*

*Kan.,* 182 F. Supp. 2d 1062, 109-90 (D. Kan. 2002) (quoting *Pride v. Does,* 997 F.2d 712, 715

(10th Cir. 1993)).  Because Plaintiff's Amended Complaint is not entirely clear on this point, the

court will presume that the defendants have been sued in both their official and individual

capacities.

As a preliminary matter, the court finds that the official-capacity claims against

Defendants O'Donnell, Zamaloff, and Berkibile are properly dismissed as redundant.  "When an

action is one against named individual defendants, but the acts complained of consist of actions

taken by defendants in their official capacity as agents of the United States, the action is in fact

one against the United States." *Atkinson v. O'Neal*, 867 F.2d 589, 590 (10th Cir. 1989) (citations

omitted).  Here, naming Defendant Holder as a defendant in his official capacity is sufficient to

effectively name the United States as defendant.  As a consequence, Plaintiff's claims against the

remaining defendants in their official capacities are redundant, and may either be stricken or

dismissed.  *See, e.g., Silverstein v. Fed. Bureau of Prisons,* 704 F. Supp. 2d 1077, 1087 (D. Colo.

2010 (relying on Fed. R. Civ. P. 12(f) to strike official-capacity claims that were redundant of

claims against the BOP); *Saleh v. Fed. Bureau of Prisons,* No. 05-cv-02467-PAB-KLM, 2008 WL 6893366 at *5 (D. Colo. July 29, 2008) *recommendation accepted in part and rejected in part on other grounds,* 2009 WL 3158120 (D. Colo. Sept. 29, 2009) (listing cases dismissing official-capacity claims against individual defendants where the appropriate entity had already been named).

In addition, it is well established that the United States is immune from suit unless it has consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also United States v. $30,006.25 in United States Currency*, 236 F.3d 610, 613 (10th Cir. 2000) (citing *Mitchell*, 445 U.S. at 538) (recognizing that a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed"). Thus, federal employees, when sued in their official capacities, are immune from suit unless sovereign immunity has been waived. *Atkinson*, 867 F.2d at 590 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)); *see also Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996). As is pertinent here, the United States has not waived its sovereign immunity for constitutional torts. *See Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or its agents acting in their official capacities). As such, Plaintiff's claims are barred to the extent they seek damages against Defendant Holder in his official capacity.

In addition to seeking monetary damages, however, Plaintiff also seeks injunctive relief. (Am. Compl. at 10.) Unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar claims for injunctive relief from alleged constitutional violations. *Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1233 (10th

Cir.2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations).  To establish his entitlement to this form of relief, however, Plaintiff's Amended Complaint must contain sufficient factual allegations to state a claim for relief.  *Abu-Fakher v. Bode,* 175 F App'x 179, 181 (10th Cir. 2006).  As such, the court considers *infra* whether Plaintiff's Amended Complaint states a claim for violations of his constitutional rights.

**B.**    ***Personal Jurisdiction over Defendants Holder, O'Donnell, and Zamaloff***

Before considering the merits of Plaintiff's claims, the court turns to Defendants' argument that the court lacks personal jurisdiction over Defendants Holder, O'Donnell, and Zamaloff in their individual capacities.

As discussed above, the court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  *OMI Holdings, Inc.*, 149 F.3d at 1090.  The Due Process Clause requires that the court conduct a two-step analysis to determine whether it has personal jurisdiction over a nonresident.  First, the court must examine "whether the nonresident defendant has 'minimum contacts' with the forum state such that [he] should reasonably anticipate being haled into court there."  *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation marks omitted).  Second, if the defendant has sufficient contacts, the court then asks "whether the court's exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice'"—that is, whether the exercise of jurisdiction is "reasonable" under

the circumstances. *Id.* (quoting *Asahi Metal Indus. Co. v. Super Ct. of Cal.,* 480 U.S. 102, 113 (1987)).

The "minimum contacts" requirement may be met by showing the existence of general or specific jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir. 1996). General jurisdiction lies when the defendants' contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is not related to the defendant's activities within the state. *Id.* at 1533.

Specific jurisdiction is predicated upon a defendant's minimum contacts with the forum that give rise to the cause of action. *Kuenzle v. HTM Sport-Und Freizeitgerate AG,* 102 F.3d 453, 455 (10th Cir. 1996). The court must consider whether Defendants Holder, O'Donnell, and Zamaloff have "'purposefully directed' his activities at residents of the forum . . . and [whether this] litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz,* 471 U.S. 462, 472 (1985); *see also Stafford v. Briggs,* 444 U.S. 527, 543-45 (1980) (absent minimum contacts other than those arising from federal employment, court may not exercise personal jurisdiction over federal official in his individual capacity). Importantly, the Supreme Court has held that foreseeability of causing injury in the forum state is not sufficient to establish the requisite minimum contacts. *Id.* at 475.

The court summarily rejects Defendants' argument that it lacks personal jurisdiction over Defendant Holder. As the United States Attorney General, Defendant Holder is the Head of the Department of Justice, 28 U.S.C. § 503, is vested with virtually all functions of other officers of

the Department of Justice as well as of the agencies and employees of the Department of Justice, 28 U.S.C. § 509, and represents the interests of the United States in the courts of the United States, 28 U.S.C. § 517. As such, the court finds that Defendant Holder undoubtedly has more than sufficient contacts with Colorado such that he should reasonably anticipate being haled into court in this jurisdiction.

Nevertheless, the court agrees that Plaintiff has failed to demonstrate that Defendants O'Donnell, and Zamaloff have sufficient contact with Colorado to support exercising personal jurisdiction over them. First, Plaintiff has not alleged any facts suggesting that Defendants O'Donnell and Zamaloff have "continuous and systematic" contacts with Colorado that would support the exercise of general personal jurisdiction over them. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1081 (10th Cir. 2004). Otherwise, Plaintiff alleges only that Defendant Zamaloff requested and Defendant O'Donnell recommended that the SAMs be implemented in September 2010. (Am. Compl. at 4-5.) However, even presuming the truth of this allegation, it is clear that the SAM was first implemented in September 2010, while he was detained at MCC in New York. (*Id.*; Sept. 2010 Memo.) The mere fact that the SAM's implementation has continued in Colorado after Plaintiff was transferred to ADX is insufficient to establish personal jurisdiction over Defendants O'Donnell and Zamaloff. *See Burger King Corp.*, 471 U.S. at 475 (defendant's contacts with the state must be purposeful, not "random, fortuitous, or attenuated").

The only other allegation that could conceivably support the exercise of personal jurisdiction is that Defendants O'Donnell and Zamaloff are "now using the SAM/restriction as a tool to keep [Plaintiff] under surveillance and monitoring . . . ." (Am. Compl. at 8.) Plaintiff's Amended Complaint, however, is devoid of any facts to support this conclusory assertion that Defendant O'Donnell and Zamaloff are monitoring his communications at ADX. *Wenz*, 55 F.3d at 1505 (only well-pleaded facts, as opposed to mere conclusory allegations, must be accepted as true in resolving a question of personal jurisdiction).  Therefore, this additional allegation also fails to establish personal jurisdiction over Defendants Zamaloff and O'Donnell.

Accordingly, even presuming the truth of Plaintiff's well-pleaded allegations and construing them in a light most favorable to him, the court finds that Plaintiff has failed to establish a *prima facie* showing of personal jurisdiction over Defendants Zamaloff and O'Donnell in their individual capacities.  Therefore, Defendants Zamaloff and O'Donnell are properly dismissed as defendants in their individual capacities.

C.       **Bivens *Remedy for First, Fifth, and Sixth Amendment Claims***

Defendants argue that there is no damages remedy under *Bivens* for Plaintiff's First Amendment, Fifth Amendment procedural due process, or Sixth Amendment claims.  The court agrees.

A *Bivens* action permits a person deprived of federal constitutional rights by a federal actor to maintain an action for monetary damages against that actor in an individual capacity. *See Bivens,* 403 U.S. 388.  As the Supreme Court explained in *Wilkie v. Robbins*, 551 U.S. 537,

15

549 (2007), *Bivens* "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest."  Since *Bivens,* which allowed an action for damages under the Fourth Amendment, the Supreme Court has recognized such a remedy in only two other contexts—violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, *see Carlson v. Green,* 446 U.S. 14 (1980), and violations of the equal protection component of the Fifth Amendment Due Process Clause, *see Davis v. Passman,* 442 U.S. 228 (1979).  Indeed, since *Carlson,* the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Corr Servs. Corp. v. Malesko,* 534 U.S. 61, 68 (2001).

To determine whether a *Bivens* remedy is appropriate, the court considers two questions. The first is "whether any alternative, existing, process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Wilkie,* 551 U.S. at 550.  If the court finds such existing alternatives inadequate, it turns to the second question, which "weigh[s] reasons for and against the creation of a new cause of action, the way common law judges have always done."  *Id.* at 554.  "[T]here is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means for obtaining legal redress."  *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).

With respect to Plaintiff's First Amendment claim, the Supreme Court has refused explicitly to acknowledge that federal prisoners may bring a claim for monetary damages based on an alleged First Amendment violation.  *See, e.g., Iqbal*, 556 U.S. at 675 (noting that the Court

has "declined to extend *Bivens* to a claim sounding in the First Amendment"); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation under *Bivens*).  "Conceivably, the Court has not recognized such claims in the context of claims by prison inmates because prisoners may pursue relief under the Federal Tort Claims Act or claims for injunctive relief based on an alleged violation of the First Amendment." *Blackman v. Torres,* No. 11-cv-2066-REB-BNB, 2013 WL 941830, at *2 (D. Colo. Mar. 11, 2013) (citing *Wilkie*, 551 U.S. at 550; 42 U.S.C. § 1997e(e)).

For similar reasons, the court finds that there is no damages remedy under *Bivens* for Plaintiff's Fifth Amendment procedural due process claim.  To remedy such a violation, a prisoner may seek injunctive relief against BOP officials, *Malesko,* 534 U.S. at 74, or could pursue a remedy under the mandamus statute, 28 U.S.C. § 1361.  *See Simmat,* 413 F.3d at 1233-34.  Further, in the procedural due process context, the appropriate remedy is not damages, but "procedural protections as the particular situation demands." *Morrisey v. Brewer,* 408 U.S. 471, 481 (1972).  *See also Allmon v. Wiley,* No. 08-cv-01183-MSK-CBS, 2011 WL 4501941, at *4 (D. Colo. Aug. 25, 2011) *recommendation adopted at* 2011 WL 4501937 (D. Colo. Sept. 27, 2011)) (declining to recognize a *Bivens* remedy on a Fifth Amendment procedural due process claim).

Finally, the court finds that it would be improper to recognize a *Bivens* remedy for the alleged violations of Plaintiff's Sixth Amendment rights.  Plaintiff alleges that the SAMs denied him meaningful access to his appellate attorney, which is "now reflected [in] the outcome of

[his] appeal." (Am. Compl. at 6-7.)  However, Plaintiff could seek either injunctive relief or post-conviction relief under 28 U.S.C. § 2255 to remedy any purported violation of his Sixth Amendment rights.  Indeed, the proper remedy for this alleged violation would not be damages, but instead would be obtaining meaningful access to his appellate attorney.

Altogether, the court finds there is no *Bivens* remedy for the alleged violations of Plaintiff's First Amendment, Fifth Amendment due process, and Sixth Amendment rights.  As such, Plaintiff's First Amendment, Fifth Amendment due process, and Sixth Amendment claims are properly dismissed to the extent that they seek damages against Defendants in their individual capacities.

**D.     *Failure to State a Claim***

Defendants further argue that, regardless of whether Plaintiff's claims target them in their individual or official capacities, Plaintiff fails to state a claim for violations of his constitutional rights.  The court addresses Defendants' more particular arguments as to each claim below.

**1.      *Claim One – First Amendment***

**a.      *Free Speech/Association***

Plaintiff's first claim alleges that the SAMs violate his First Amendment free speech rights because they deny him "the right and privilege to communicate with family, friends, the press, [and] attorneys/paralegal services." (Am. Compl. at 5.)  Based on the Tenth Circuit's holding in *Al-Owahli v. Holder,* 687 F.3d 1236 (10th Cir. 2012), Defendants argue that these allegations fail to state a plausible claim for relief.  The court agrees.

18

In *Al-Owhali,* the court addressed allegations similar to those raised in Plaintiff's first claim—namely the plaintiff, an inmate at ADX, alleged that SAMs prohibited him from writing letters to his nieces and nephews, in violation of his First Amendment rights. *Id.* at 1240-41. The Tenth Circuit found that "as a general matter, 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Al-Owhali,* 687 F.3d at 1240 (quoting *Turner v. Safely,* 482 U.S. 78, 89 (1987)). In conducting this *Turner* inquiry, the Tenth Circuit is guided by the following four factors:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* (citation omitted).

While analysis of the four *Turner* factors is required at the summary judgment stage, the court need not address them in full at the pleadings stage. *Id.* Instead, "[a]mong these factors, the first is the most important; . . . it is 'not simply a consideration to be weighed but rather an essential requirement.'" *Id.* (citing *Boles v. Neet,* 486 F.3d 1177, 1181 (10th Cir. 2007)). Thus, "in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Id.* (quoting *Gee v. Pacheco,* 627 F.3d 1178, 1187 (10th Cir. 2010)). In other words,

> [t]aken together, *Iqbal* and *Turner* require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.  This is not to say that [a plaintiff] must identify every potential legitimate interest and plead against it.  However he is required to recite[] facts that might well be unnecessary in other contexts' to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Id.* (quoting *Gee,* 627 F.3d at 1185, 1188) (internal quotation marks omitted).

The court finds that Plaintiff has failed to sufficiently allege that the SAMs are not reasonably related to a legitimate penological interest.  Plaintiff alleges merely that the SAMs are "based solely on manipulative accusation [sic]; . . . bias and prejudice [], with no justification for its imposition"; and constitute "hateful racism and prejudice act [sic]."  (Am. Compl. at 4, 7.)  These conclusory allegations are not supported by any facts suggesting that Defendants lacked a legitimate penological interest to impose and renew the SAMs.

Furthermore, Plaintiff admits that the SAMs were imposed because he alleged threatened Defendants O'Donnell and Zamaloff.  (*Id.* at 6.)  This constitutes a coherent explanation for the SAMs.  Plaintiff's unsupported assertion that that the SAMs were imposed solely by use of "allegations" of these threats, rather than through "evidence or facts" (*id.*) fails to rebut this legitimate penological purpose for imposing the SAMs.  *Al-Owhali,* 687 F.3d at 1241 (citing *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119 (1977)).  *See also Mohammed v. Holder,* No. 07-cv-02697-MSK-BNB, 2011 WL 4501959 (D. Colo. Sept. 29, 2011) *accord Al-Owhali,* 687 F.3d at 1241 (concluding that an inmate's challenge to SAMs was plausible where his pleadings pointed to a recommendation from the warden that the inmate's privileges be

expanded).  Accordingly, the court finds that Plaintiff fails to state a claim for violations of his

First Amendment right to free speech and free association.

### b.  *Access to the Courts*

Plaintiff's first claim also alleges that the SAMs violated his First Amendment right of

access to the courts.  Defendants argue that this claim fails because Plaintiff has not sufficiently

alleged that he suffered any actual injury.  The court agrees.

Prison inmates have a constitutional right to meaningful access to the courts.  *Bounds v.

Smith,* 430 U.S. 817, 822-23 (1977).  This right prohibits prison officials from "affirmatively

hinder[ing] a prisoner's efforts to construct a nonfrivolous appeal or claim."  *Green v. Johnson,*

977 F.2d 1383, 1389 (10th Cir. 1992).  However, to state a right of access claim, "a prisoner

must demonstrate actual injury from interference with his access to the court—that is, that the

prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning

his conviction or conditions of confinement."  *Gee,* 627 F.3d at 1191 (citing *Lewis v. Casey,* 518

U.S. 343, 351-55 (1996)).  "Conclusory allegations of injury in this respect will not suffice."

*Wardell v. Duncan,* 470 F.3d 954, 959 (10th Cir. 2006)) (citing *Cosco v. Uphoff,* 195 F.3d 1221,

1224 (10th Cir. 1999)).

Plaintiff's allegations fail to satisfy the actual injury requirement.  Plaintiff alleges only

that the SAMs denied him his "right and privilege to communicate with . . . . attorneys/paralegal

services" and denied him "free access to the courts of appeal and the appellate attorney who were

assigned to represent me which as cost [sic] me to lose my appeal."  (Am. Compl. at 5.)  Not

only do these allegations fail to show how the SAMs limited or prevented Plaintiff from communicating with his appellate attorney, they also fail to outline how his appeal was dismissed as a consequence.  Indeed, on the latter point, a review of the opinions issued by the United States Court of Appeals for the Second Circuit indicates that Plaintiff's appeal was rejected on its merits—not because Plaintiff was somehow unable to communicate with his attorney.  *See Davis I,* 689 F.3d 179 (2d Cir. 2012); *United States v. Davis,* 491 F. App'x 219 (2012) ("*Davis II*").  As a consequence, the court finds that Plaintiff has failed to plausibly allege that the imposition of the SAMs caused any actual injury to his ability to pursue his criminal appeal.  As such, Plaintiff fails to state a claim for violations of his First Amendment right of access to the court.

### 2. *Claim Two*

#### a. *Fourth Amendment*

Plaintiff's second claim alleges that the SAM violates his Fourth Amendment rights because "confinement in the special housing united for SAM inmates [] consists of unreasonable searches and seizures of properties without probable cause and no security reasons."  (Am. Compl. at 6.)  It is well established, however, that "the Fourth Amendment does not establish a right to privacy in prisoners' cells."  *Hayes v. Marriot,* 70 F.3d 1144, 1146 (10th Cir. 1995) (citing *Hudson v. Palmer,* 468 U.S. 517, 522-30 (1984)).  As such, the allegations of cell searches and property seizures contained in Plaintiff's second claim fail to state a plausible claim for relief under the Fourth Amendment.

      ***b.***      ***Fifth Amendment***

      ***i.***      ***Due Process***

As discussed above, Plaintiff's second claim also alleges that the imposition of the SAMs violate his Fifth Amendment procedural due process rights.  The court must "examine procedural due process questions in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989) (internal citations omitted).

With respect to the first step—the existence of a liberty interest—"prison conditions that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' *may* create a liberty interest protected by the Due Process Clause."  *Trujillo v. Williams,* 465 F.3d 1210, 1225 (10th Cir. 2006) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)) (emphasis in original).  The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).  Thus, in *Sandin,* the Supreme Court determined that an inmate's confinement in punitive segregation, which (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.  515 U.S. at 486.

Instead, an "atypical and significant hardship" sufficient to create a liberty interest is one that is substantial in both degree and duration.  Thus, in *Wilkinson,* the Supreme Court concluded

that an inmate had a liberty interest in avoiding placement in a supermax prison where inmates were confined to their cells 23 hours per day with only one hour of exercise in an indoor room; almost all human contact was prohibited; the placement at the prison was indefinite and impacted on the inmates' eligibility for parole.  545 U.S. at 223-24.

Based on *Wilkinson*, the Tenth Circuit has developed four factors the court should consider in determining whether an inmates' particular circumstances constitute an atypical and significant hardship:

> whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson*; and (5) the placement is indeterminate . . . .

*Estate of DiMarco v. Wyo. Dept. of Corrs.,* 473 F.3d 1334, 1342 (10th Cir. 2007).

At least one prior decision from this district found that an ADX inmate's allegations regarding the conditions of his confinement while subject to SAMs conceivably demonstrated an atypical and significant hardship in relation to the ordinary incidents of prison life.  *Hale v. Ashcroft,* No. 06-cv-00541-REB-KLM, 2008 WL 4426128, at *5 (D. Colo. Sept. 24, 2008).  In light of *Hale*, the court will assume, without deciding, that Plaintiff has a protected liberty interest in avoiding the imposition of the SAMs.  *See also Mohammed v. Holder,* 07-cv-02697-MSK-BNB, 2011 WL 4501959, at *12 (Sept. 29, 2011) (assuming without deciding that the imposition of SAMs gives rise to a protected interest).

Nevertheless, the court finds that Plaintiff has failed to plausibly allege that the process he received when the SAMs were imposed and renewed was constitutionally inadequate.  In the prison context, the "requirements of due process are flexible and call for such procedural protections as the particular situation demands."  *Wilkinson,* 545 U.S. at 224 (citation and internal quotation marks omitted).  Where "the inquiry draws more on the experience of prison administrators, and where the [government's] interest implicates the safety of other inmates and personnel," informal, nonadversary procedures are sufficient.  *Id.* at 228–29.

Plaintiff's allegations focus largely on his belief that the bases for imposing the SAMs against him "should have been prosecuted for as a criminal offense," for which "due process clearly requires proof of guilt on any allegation/accusation beyond a reasonable doubt."  (Am. Compl. at 6.)  Contrary to Plaintiff's belief, however, the Supreme Court has concluded that prison inmates are not entitled to the full panoply of procedural protections that apply in a criminal case.  *See Wilkinson,* 545 U.S. at 225 (citing *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Wolff,* 418 U.S. 539 (1974)) ("Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all.")

Plaintiff's only other allegation regarding the process he received is that the SAMs were "imposed solely by use of allegations[,] not evidence or facts[,] that [he] threatened federal officials."  (Am. Compl. at 6.)  This allegation is too vague, general,

25

and devoid of factual support to raise a plausible inference that the procedures attendant

to the imposition and renewal of the SAMs were constitutionally inadequate.  Quite

simply, the court cannot ascertain from this allegation what procedures, if any, preceded

the imposition and renewal of the SAMs.  Accordingly, because Plaintiff has failed to

allege sufficient facts demonstrating that the process he received at the time the SAMs

were imposed and renewed was constitutionally deficient, he fails to fails to state a claim

for violation of his Fifth Amendment procedural due process rights.

### ii.      *Equal Protection*

Plaintiff's second claim also asserts that the imposition and renewal of the SAMs have

violated his Fifth Amendment equal protection rights.  The court agrees with Defendants that

Plaintiff has not plausibly pleaded either a traditional or "class of one" equal protection claim.

(Mot. at 13.)

The Equal Protection component of the Fifth Amendment's Due Process Clause prohibits

the government from treating similarly situated individuals differently.  *See City of Cleburne,*

*Tex. v. Cleburne Living Ctr.,* 473 U.S. 432 (1985); *see also Buckley v. Valeo,* 424 U.S. 1, 93

(1976) (recognizing that the "[e]qual protection analysis in the Fifth Amendment area is the same

as that under the Fourteenth Amendment.")  Thus, regardless of the underlying theory, Plaintiff

must first allege facts showing that he was treated differently from others who were similarly

situated to him.  *Taylor v. Roswell Ind. Sch. Dist.,* 713 F.3d 25, 53 (10th Cir. 2013).  Indeed, this

element is particularly important in a class of one case.  *Jennings v. City of Stillwater,* 383 F.3d

1199, 1213 (10th Cir. 2004); *Jicarilla Apache Nation v. Rio Arriba Cnty.,* 440 F.3d 1202, 1213

(10th Cir. 2006) ("courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.").

Plaintiff alleges that "there are defendants with similar accusations and charges that have no SAM imposition or restrictions imposed on them." (Am. Compl. at 6.) This conclusory allegation is insufficient to establish the similarly-situated element. Notably, Plaintiff has not pointed to any particular inmates, nor has he set forth facts demonstrating how they were similarly situated to him in all material respects.

Furthermore, to the extent that Plaintiff alleges that he was denied equal protection based on his race, Plaintiff must allege facts demonstrating that Defendants acted with a discriminatory intent or purpose in imposing the SAMs. *See Arlington Heights v. Metro. Hous. Dev.,* 429 252, 256 (1977); *Green v. Corrs. Corp. of Am.,* 401 F. App'x 371, 376 (10th Cir. 2010) (conclusory allegations of racial motivation are insufficient to state an equal protection claim). Without some factual support, Plaintiff's speculative allegations that the SAMs were "imposed by use of racial profiling" and constituted "hateful racism and prejudice act" (Am. Compl. at 7) are insufficient to demonstrate discriminatory intent. Accordingly, the court finds that Plaintiff fails to state a claim for violations of his Fifth Amendment equal protection rights.

### c.      Sixth Amendment

Plaintiff alleges that the SAMs violate his Sixth Amendment rights by preventing him "from free access to appellate attorney of [his] choice, which now reflected the outcome of [his] appeal." (Am. Compl. at 6-7.) The Sixth Amendment's guarantee of the right to counsel in

criminal prosecutions includes the defendant's right to retain counsel of his choice.[6]  *United States v. Collins,* 920 F.2d 619, 625 (10th Cir. 1990).  However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *United States v. Gonzales-Lopez,* 548 U.S. 140, 151 (2006).  The Sixth Amendment also affords an inmate "meaningful access to his attorney" for the direct appeal of his criminal conviction.  *Mann v. Reynolds,* 46 F.3d 1055, 1061 (10th Cir. 1995) (invalidating prison policy prohibiting contact visits between inmates and their attorneys) (citation omitted).

The court finds that Plaintiff has failed to state a claim for violation of his Sixth Amendment rights.  First, because he admits that his attorney was appointed to represent him (Am. Compl. at 5), Plaintiff did not have a right under the Sixth Amendment to counsel of his choice.  Otherwise, Plaintiff's allegations that the SAMs prevented him "free access" to his appellate attorney lack sufficient factual support to render his Sixth Amendment claim plausible.  Indeed, Plaintiff's Amended Complaint fails to specify when or how he was denied "free access" to his appellate attorney.  This factual deficiency is particularly noteworthy because the appellate opinions issued in his criminal case suggest that Plaintiff was represented by counsel throughout appeal.  *See Davis I,* 689 F.3d 179; *Davis II,* 491 F. App'x 219.  As such, the court finds that Plaintiff fails to state a claim for violations of his Sixth Amendment rights.

---

[6] The right to counsel of one's choice, however, is not absolute and thus "may not be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same."  *Collins,* 920 F.2d at 625 (citation omitted).  This consideration does not appear to be implicated in this case.

### d.      Eighth Amendment

Plaintiff alleges that the SAMs violated his Eighth Amendment rights to be free from cruel and unusual punishment because they denied him adequate access to medical services and treatment for serious medical issues—namely, bladder cancer and diabetes.  (Am. Compl. at 7.)

The Eight Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has both an objective and a subjective component.  To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  The official must "know[ ] of and disregard[ ] an excessive risk to inmate health and safety."  *Id.* at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

Assuming, without deciding, that Plaintiff's bladder cancer and diabetes constitute serious medical needs, the court finds that Plaintiff's allegations nevertheless fail to satisfy the subjective component.  First, Plaintiff's allegations that the SAMs are "preventing [him from

receiving] adequate access to medical series and treatment"; that he lacks "access to his cancer treatment"; and that "no diabetic food [is] provided for diabetic prisoners" lack sufficient factual detail to raise a plausible inference that he is actually being denied appropriate medical care. (Am. Compl. at 7.)  Moreover, even if these allegations were sufficient, Plaintiff's Amended Complaint is devoid of any allegations suggesting that Defendant Berkebile—much less Defendants Holder, O'Donnell, and Zamaloff— both (1) knew that Plaintiff was being denied "diabetic food" and care for his bladder cancer, and (2) consciously disregarded this risk to Plaintiff.  Accordingly, the court finds that Plaintiff fails to state a claim under the Eighth Amendment.

### 3.      Claim Three

As discussed above, Plaintiff's third claim alleges that Defendants O'Donnell and Zamaloff lack jurisdiction to impose security measures (i.e. the SAMs) against him because, after his conviction and sentencing, the BOP has sole jurisdiction over Plaintiff.  Plaintiff also alleges that Defendant Berkibile "violated this claim by allowing [Defendants O'Donnell and Zamaloff] to monitor [his] phone/mail."  (*Id.* at 8.)  However, even presuming the truth of these allegations, Plaintiff fails to set forth any specific constitutional or statutory right that he believes Defendants' actions violated.  As a consequence, the court finds that Plaintiff's third claim fails to state a claim upon which relief can be granted.  *Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) ("to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions

30

harmed him or her; and *what specific legal right* the plaintiff believes the defendant violated.")

(emphasis added).

### E.    *Qualified Immunity*

Defendants also argue they are entitled to qualified immunity in their individual

capacities.  (Mot. at 11.)  Whether Defendants are entitled to qualified immunity is a legal

question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir.2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand."  *Id.*  "Qualified

immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Id.*

Having concluded that Plaintiff has failed to state a claim for a constitutional violation,

Defendants are entitled to qualified immunity from Plaintiff's claims.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that "Defendants' Motion to Dismiss" (Doc. No. 46) be

GRANTED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions

of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge